IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE EUGENE McCOY, | No. 2:12-CV-0275-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 19, 2008. In the application, plaintiff claims that disability began on October 18, 2002. Plaintiff claims that disability is caused by a combination of: "Rt. shoulder and lower back pain, spastic colon, chronic daily pain and limited ROM in the right shoulder and lower back." Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 30, 2010, before Administrative Law Judge ("ALJ") John R. Price. In a April 19, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): right rotator cuff repair; mild arthritis of the hip and back; asthma; hypertension; hearing loss; and depression;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work except lifting and/or carrying greater than 10 pounds frequently and 20 pounds occasionally; work not requiring reaching above shoulder level with the dominant right upper extremity; work not requiring exposure to excessive concentrations of dust, gases, fumes, and poor ventilation; work at unprotected heights or around dangerous unguarded moving machinery; work requiring climbing and balancing or around loud noise; and work limited to a low stress environment defined as little to no change in work routine from day to day with avoidance of the general public;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on January 11, 2012, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred by disregarding lay witness evidence from plaintiff's wife, Wendy Brasher; (2) the ALJ erred by rejecting plaintiff's credibility; (3) the ALJ erred by not finding that fibromyalgia is a severe impairment; (4) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and (5) hypothetical questions posed to the vocational expert did not accurately reflect

plaintiff's limitations.

### A. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The ALJ, however, need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id. As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. Id.

///

4

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony. See 454 F.3d 1050, 1053-54 (9th Cir. 2006). The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments. Id. The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision. See id. Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See id. at 1054-55. The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence

concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

>  As to Ms. Brasher's testimony, the ALJ stated:
>
>  The claimant's wife also appeared and testified.  She stated that he was previously a very active and physical man but he injured his shoulder and then returned to work too soon, performing regular duties.  She stated that he was having a lot of pain in his shoulder and he required a second shoulder surgery in early 2003.  After this he did not get better and his stamina lessened.  He can not work outside or otherwise be active like in the past without suffering afterward and he had trouble caring for their daughter.  She also stated that his irritable bowel problems have worsened over time and he has become increasingly depressed.  They do not socialize much anymore and he prefers to stay home due to his pain.  He frequently has to lay down or sit down after performing any activity, such as mowing their lawn, and he does not cook meals like he used to.
>
>  * * *
>
>  . . . The claimant and his wife testified that he had a shoulder surgery some time in early 2003 but there is no evidence to show that this was not successful or that he had post-surgical complications, and they testified that he was advised to remain active afterward.  The record as a whole supports that he did remain active caring for his daughter. . . .

Plaintiff argues:

>  The ALJ, in his decision noted that plaintiff's wife, Wendy Brasher, testified. (A.R. 20).  However the ALJ failed to evaluate her testimony as to its probative value.  The ALJ is required to do more than simply briefly summarize the lay witness testimony, but must state the basis why the testimony was not found to be credible.

The court does not agree with plaintiff that the ALJ erred.  Plaintiff appears to argue that the ALJ rejected plaintiff's wife's testimony without providing any analysis.  This is incorrect.  As indicated above, the ALJ acknowledged that plaintiff's wife testified and summarized her testimony.  This testimony included statements that, after a second shoulder surgery in 2003, plaintiff did not get any better and could not care for his daughter.  The ALJ, however noted that these statements were inconsistent with the evidence as a whole which showed no signs that the 2003 shoulder surgery was unsuccessful and that, after this surgery,

1 plaintiff was active caring for his daughter. Thus, the germane reason provided for rejecting
2 plaintiff's wife's testimony is that it is inconsistent with the medical evidence. See Bayliss v.
3 Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

### B. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily

1  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

2  his day engaged in pursuits involving the performance of physical functions that are transferable

3  to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

4  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

5  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

6          As to plaintiff's credibility, the ALJ stated:

> The claimant testified that he had a right rotator cuff surgery in 1999 but returned to work after this.  His work required a lot of heavy manual labor such as mowing lawns, pruning trees, and running heavy machinery and there was no light duty work available.  Prior to stopping work later in October 2002, his alleged onset date, he aggravated the shoulder moving a football sled.  He still has shoulder pain and it gets to be so severe that he can't sleep at night.  He also described having pain in his neck, low back, right elbow, left shoulder, and legs.  After he stopped work he stayed home and helped care for his infant daughter but this was difficult for him and aggravated his pain, particular his better (left) shoulder.  He has continued to perform normal parenting activities as well as chores around the house such as laundry and dishes.  However, it takes him all day to perform just a few chores around the house – activities that used to take just a fraction of time to perform.  He can not take prescription pain medication because of a spastic colon.  He has instead used Advil and ointments like Ben Gay.  He has tried using marijuana for pain relief, as well.  He stated that he has had worsening bowel problems in the past 5 years and currently he is in the bathroom most of the day.  The record supports that he was seen in the ER for stomach pain in November 2004 but he left the ER after 2 hours because they were not helping him.  He reported episodes where he has experienced amnesia and he alleged having depression, for which he has been prescribed Celexa medication.  This helps to a certain degree but he still feels angry and upset about his condition.  He also uses an inhaler for asthma.

                    * * *

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  The claimant has a history of right rotator cuff surgery in 1999 and again (though not documented) in early 2003 per his wife's testimony at the hearing.  He apparently aggravated his shoulder moving a football sled (Exhibit 14F, page 252).  Even so, medical records submitted from Kaiser demonstrate no consistent treatment for shoulder pain during the period in question after October 2002 and, for that matter, reflect little consistent treatment for his alleged

|   |   |
|---|---|
| 1 | neck pain or other medical problems.  There was no light duty work for him, per his testimony, and he collected unemployment, thus holding himself out as ready, willing, and able to work (Exhibit 14F, Page 226). He testified that he did not have any therapy for the shoulder after he stopped work and he did not take pain medications.  He remained active as a stay-at-home father caring for an infant daughter (Exhibit 14F, pages 217 and 226).  The record shows that he later reported neck and shoulder pain in December 2003 [but] was found to have full range of motion of the neck and shoulder and good shoulder strength (Exhibit 14F, pages 221 and 222).  Normal strength in his arms was also noted later in 2004 and he was noted to be very active raising his daughter (Exhibit 14F, page 217).  His overall treatment in 2003 and 2004 appears to be very limited based on the relevant Kaiser records at 14F.  He has reported that he uses over-the-counter Advil because prescription medication affected his irritable bowel syndrome but aside from an emergency room visit where he left against medical advice (Exhibit 14F, page 212), the record shows very limited irritable bowel syndrome problems until October 2007, just prior to his date last insured (Exhibit 1F, pages 12 through 22).  He had negative colonoscopy and barium enema tests and he admitted that he did well with his bowel problems until October 2007 (Exhibit 1F, page 13).  There is only one instance of a transient ischemic attack type episode as well and I find that these are both non-severe impairments.  He may have taken Celexa for depression but there are very few references to depression and his medication appears to have helped stabilize this consistent with both the testimony of the claimant and treatment records (Exhibit 14F, pages 167-172).  Medical records submitted from Kaiser indicate that his depression was attributable to life coping problems including boredom of retirement and various somatic complaints.  The claimant indicated that he could not tell the difference being maintained on antidepressant medication but his wife indicated that his symptoms were much improved (Exhibit 14F, page 18).  Apparently, the claimant was referred to a psychiatrist indicating only that he had multiple physical problems including fibromyalgia, chronic pain, and severe gastrointestinal symptoms.  He also used marijuana although this was not medically prescribed.  Treatment notes from May 2007 support that his marijuana provided fair relief of his alleged joint symptoms and he was continuing to perform activities such as yardwork (Exhibit 14F, page 144).  While he was noted to have an asthma exacerbation at that time related to yardwork, the record reflects that this has not been a frequent problem over time and both this condition and his hypertension have been largely stable with medication. |

Plaintiff challenges the following phrase: ". . . extent they are inconsistent with the above residual functional capacity assessment." Plaintiff quotes an unreported case from the District of Oregon, <u>Leitheiser v. Astrue</u>, 2012 WL 967647 (D. Oregon 2012), in which the court stated:

"Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning and is not sustained by this court."

Plaintiff concludes that, under the standard applied in this case, ". . . the ALJ fails to provide clear and convincing reasons to reject the claimant's alleged symptoms."

In this case, the ALJ cited the following reasons, among others, for finding the plaintiff's testimony not credible: (1) a level of treatment inconsistent with the alleged symptoms; and (2) plaintiff's conduct inconsistent with an alleged disability.  The court finds that these are legally sufficient and clear reasons for rejecting a claimant's credibility.  See Smolen, 80 F.3d at 1284.  They are also convincing because they are supported by substantial evidence.  As to plaintiff's level of treatment, the records reflects that, despite plaintiff's allegedly disabling symptoms, he sought little to no consistent treatment for neck, shoulder, or back pain.  Plaintiff testified that he did not seek any physical therapy for his shoulder problems or take any pain medications after he stopped working.  Additionally, as to plaintiff's conduct, the record shows that, despite allegedly disabling pain, plaintiff cared for his infant daughter as a stay-at-home father.  Most significant, plaintiff collected unemployment benefits which reveals his own belief that he was able to work.  Such a belief is, of course, inconsistent with his testimony of disabling symptoms.

### C.   Severity Determination

Plaintiff argues that the ALJ erred by not finding fibromyalgia to be a severe impairment.  In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

The court does not agree with plaintiff that the ALJ erred with respect to fibromyalgia. Most notably, the evidence of fibromyalgia indicates that the condition arose after expiration of plaintiff's insured status on December 31, 2007. Thus, there is no evidence that fibromyalgia was any kind of impairment, severe or otherwise, at any time during the relevant period in this case. For this reason, the ALJ did not err by failing to include fibromyalgia as a severe impairment.

### D.  Residual Functional Capacity Finding

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations. In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

/ / /

/ / /

1    As to plaintiff's residual functional capacity, the ALJ first discussed the hearing

2 testimony provided by plaintiff and his wife.  The ALJ then discussed his reasons for not

3 accepting plaintiff's testimony as credible.  The ALJ then stated:

> After reviewing the record as a whole, the undersigned finds that prior to his date last insured the claimant was capable of light work with no reaching above the shoulder level with the dominant right upper extremity. Furthermore, I accept that he could not perform work requiring exposure to excessive concentrations of dust, gases, fumes, and poor ventilation, work at unprotected heights or around loud noise.  Due to depression and reports of difficulty handling stress, I also find that he was limited to a low stress environment defined as little to no change in work routine from day to day with avoidance of the general public.  Greater limitations do not appear to be warranted in this case given the claimant's very limited treatment during the time period in question, as outlined above.  Right after he aggravated the shoulder he was advised to lift less than 10 pounds (Exhibit 14F, page 234) but there was no documented follow-up after this and there is no assessment from a physician who examined or treated the claimant subsequent in time who advocated a greater degree of limitation from the level set out above. . . .

13 Plaintiff argues that the ALJ's assessment is "not completely accurate."  Specifically, plaintiff

14 contends that, despite the ALJ's statement that plaintiff received "very limited treatment" after he

15 aggravated his shoulder injury, Kaiser records show that plaintiff continued to have shoulder

16 problems after his surgery in 2003.  Plaintiff notes a referral by Kaiser to physical therapy and a

17 December 9, 2003, physical therapy evaluation.  This, however, still represents limited treatment

18 when viewed in the context of the disabling symptoms alleged by plaintiff.

19    **E.    Hypothetical Questions**

20    The ALJ may meet his burden under step five of the sequential analysis by

21 propounding to a vocational expert hypothetical questions based on medical assumptions,

22 supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

23 Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

24 Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

25 ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

26 1341 (9th Cir. 1988).

1          Hypothetical questions posed to a vocational expert must set out all the
2  substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.
3  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's
4  limitations, the expert's testimony as to jobs in the national economy the claimant can perform
5  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While
6  the ALJ may pose to the expert a range of hypothetical questions based on alternate
7  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's
8  determination must be supported by substantial evidence in the record as a whole.  See Embrey v.
9  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).
10         Plaintiff argues that hypothetical questions posed by the ALJ failed to include
11 non-exertional limitations such as: (1) side effects from medications to control digestive tract
12 problems; (2) fibromyalgia-related joint pain; and (3) limitations from mental impairments,
13 including an inability to work with the general public or respond appropriately to supervisors.  As
14 to fibromyalgia, that condition did not arise until after the date plaintiff was last insured.
15 Similarly, the record indicates that plaintiff did not complain of persistent problems related to
16 digestive tract issues until after the date last insured.  Until October 2007 plaintiff reported that
17 he felt "fine" and had experienced no bowel problems.  Finally, as with fibromyalgia and
18 digestive problems, plaintiff first experienced depression in September 2009 – after the date last
19 insured.
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 16) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 29, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE